## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CONRAD RICHARD**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  07-9225**

**EASTERN LOUISIANA MENTAL HEALTH**                   **SECTION "R"(4)**
**SYSTEM, FORENSIC DIVISION, ET AL.**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.       Factual and Background

Before the Court is a petition for writ of habeas corpus filed by pro se petitioner Conrad Richard ("Petitioner"), pursuant to 28 U.S.C. § 2254.  At the time of the filing of this petition, Petitioner was confined at the East Louisiana Mental Health System, Forensic Division (f/k/a Feliciana Forensic Facility) in Jackson, Louisiana ("ELMHS-Forensic Division") as a result of being

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

found not guilty by reason of insanity on the charge of arson.[2]  He complains that he is entitled to a "pardon from the State of Louisiana" which the Court construes as a request for release from indefinite probation which requires him to be constantly monitored by the State regarding his mental condition.

The record indicates that on September 12, 1989, Richard was charged in Orleans Parish with the August 4, 1989, aggravated arson of a duplex located at 3301-3303 Banks Street which was owned by Ms. June Washington.[3]  On November 16, 1989, Richard was found not competent to proceed due to bipolar affective disorder, manic type in partial remission.[4]  Richard remained in the ELMHS-Forensic Division.[5]

On May 15, 1990, the Trial Court found Richard competent to proceed to trial.[6]  After a non-jury trial held on May 18, 1990, the Court found Richard to be not guilty and not guilty by reason of insanity.[7]  The Court remanded him back to ELMHS-Forensic Division.[8]  After evaluation by the forensic psychiatrists, on August 9, 1990, the Trial Court adjudged that Richard was not a danger to himself or others, and he was released on probation to live with his sister, Joanne Richard.[9]

---

[2]Richard signed this application on October 29, 2007.

[3]St. Rec. Vol. 1 of 2, Bill of Information, 9/12/89.

[4]St. Rec. Vol. 1 of 2, Commitment Order, 11/16/89; St. Rec. Vol. 2 of 2, Minute Entry, 11/16/89.

[5]St. Rec. Vol. 2 of 2, Minute Entry, 2/16/90.

[6]St. Rec. Vol. 2 of 2, Minute Entry, 5/15/90.

[7]St. Rec. Vol. 1 of 2, Minute Entry, 5/18/90.

[8]St. Rec. Vol. 1 of 2, Judgment and Order, 5/18/90.

[9]St. Rec. Vol. 1 of 2, Judgment and Order, 8/10/90; Sentence and Conditions of Probation, 8/9/90; St. Rec. Vol. 2 of 2, Minute Entry, 8/9/90 (also indicating that he could live with his other sister Terry Richard, although this is not in the Court's order).

On August 21, 1991, the Trial Court issued a *capias* for Richard's arrest and eventually scheduled a revocation hearing for May 12, 1992.[10] After the hearings held on May 12 and 19, 1992, the Trial Court returned Richard to active probation.[11]

Richard returned to court for a probation revocation hearing on February 16, 1993, at which time the Court ordered that he be evaluated by the prison psychiatrist.[12] The Court, again, returned him to active probation on March 30, 1993, and ordered that he live with his aunt, Inez Joseph, enter care at Chartres Mental Health Clinic, and remain on prescribed medication.[13]

Over five years later, on May 22, 1998, Richard was arrested and charged with exposing himself in public, flight from an officer, aggravated battery on a police officer, terror neighbor/acts of violence, criminal trespassing, and resisting arrest.[14] On December 10, and 11, 1998, the Trial Court held a hearing to determine whether Richard's probation should be revoked, whether he was a danger to himself or others, and regarding his competence.[15] The commitment order issued on December 11, 1998, stated that Richard, "cannot be discharged or released on probation wihtout [sic] danger to himself or others."[16] The Court ordered that he be returned to the ELMHS-Forensic Division and he was transferred there on March 17, 1999.[17]

---

[10]St. Rec. Vol. 1 of 2, Minute Entry, 8/22/91; Minute Entry, 4/9/92.

[11]St. Rec. Vol. 1 of 2, Minute Entry, 5/12/92; Minute Entry, 5/19/02.

[12]St. Rec. Vol. 1 of 2, Minute Entry, 2/12/93.

[13]St. Rec. Vol. 1 of 2, Minute Entry, 3/30/93.

[14]St. Rec. Vol 1 of 2, Letter to Court, 8/4/98; List of Charges from May 22, 1998.

[15]St. Rec. Vol. 1 of 2, Minute Entry, 12/10/98; Minute Entry, 12/11/98.

[16]St. Rec. Vol 1 of 2, Judgment and Order of Commitment, 12/11/98.

[17]*Id.*; St. Rec. Vol. 1 of 2, Letter to Court, 9/10/99.

On June 30, 2000, the Clinical Director of the Department of Health and Hospitals opined in a letter to the Trial Court that Richard was competent to assist his attorney with his defense to the 1998 criminal charges.[18]  He further indicated that he was preparing to discharge Richard from the mental health system to the custody of the Orleans Parish Criminal Sheriff upon receipt of an order from the court returning him for a statutorily required hearing within 30 days.[19]

On January 30, 2001, the Review Panel recommended that Richard be conditionally released to Harmony Center, Inc., in Baton Rouge, Louisiana.[20]  Based on the report, on April 10, 2001, the presiding judge found that Richard no longer needed inpatient treatment and that he could be conditionally released provided he received adequate outpatient treatment, supervision, and monitoring pursuant to La. Code Crim. P. art. 657.1.[21]  Consequently, Richard was placed on conditional release and supervised probation at the Harmony House Facility for a period of five years.[22]  On March 18, 2005, on motion of the Probation & Parole Officer with the Louisiana Department of Corrections, the Trial Court granted Richard permission to move to Deville Plaza Apartments in Baton Rouge, Louisiana  subject to certain conditions.[23]

---

[18]St. Rec. Vol. 1 of 2, Letter to Court, 6/30/00.

[19]*Id.*

[20]St. Rec. Vol. 1 of 2, Letter to Court, 1/30/01.  The conditions to which Richard was required to comply included: (1) no access to weapons; (2) refrain from alcohol/illicit drugs and from patronizing establishments where alcohol beverages/ drugs are sold or consumed; (3) submit to routine and random drug screens;(4) the conditional release Program Coordinator was to provide the Court with progress reports regarding his group home adjustment and compliance within 90 days of his placement and every 180 days thereafter; and (5) any violation of the above would constitute his immediate return to the ELMHS-Forensic Division.  St. Rec. Vol 1 of 2, Letter to Court (report attached), 1/30/01.

[21]St. Rec. Vol 1 of 2, Judgment of Supervised Probation, 4/10/01; St. Rec. Vol. 1 of 2, Minute Entry, 4/10/01.

[22]*Id.*; *see also*, St. Rec. Vol. 2 of 2, Minute Entry, 9/19/02; Minute Entry (status conference), 1/9/04.

[23]St. Rec. Vol. 1 of 2, Trial Court Order, 3/18/05; St. Rec. Vol. 2 of 2, Minute Entry, 3/18/05.  The conditions upon which Richard was allowed to move to the apartments were: (1) submit to a weekly drug test by Probation & Parole; (2) submit to at  least one blood test every three months to ensure a therapeutic level of mental health medication

Richard suggests that he grew tired of the perpetual probationary status, and he contacted the Louisiana Board of Pardons and Parole to request clemency.  The Board, on August 9, 2006, replied to his request and provided him with instructions on how to prepare his case to be heard for clemency review.[24]

On May 23, 2007, the Louisiana Board of Pardons and Parole replied to Richard confirming their conversation that he was not a convicted felon, and therefore he remained under the order of the Trial Court regarding the sanity commission.[25]  As a result, the Louisiana Board of Pardons did not have any standing over his request, and they were closing their file.

On May 8, 2008, the Trial Court issued an order that Richard be continued in the Conditional Release Program under the supervision of the Louisiana Department of Public Safety and Corrections, the Office of Probation and Parole and the Department of Health and Hospitals, Community Forensic Services Division, for a period of one year, as provided under La. Code Crim. P. art. 657.2.[26]

## II.    **Federal Petition**

On October 29, 2007, the clerk of the United States District Court for the Middle District of Louisiana filed Richard's federal petition for federal habeas corpus relief in which he challenges his perpetual probationary status after his verdict of not guilty and not guilty by reason of insanity.  The

---

(e.g. Depacote); (3) submit to a mental status exam at least every six months by Dr. Vosburg, as well as any other examinations deemed necessary by forensic staff; (4) maintain at least part-time employment; and (5) comply with all previously ordered general and special conditions of probation.  *Id.*

[24]Rec. Doc. No. 1-3, p. 19, Letter, 8/9/06.

[25]Rec. Doc. No. 1-3, p. 17, Letter, 5/23/07.

[26]*See*, Attachment to Rec. Doc. No. 26, Order, 5/8/08.

matter was transferred to this Court on November 26, 2007.[27]  Richard does not expressly assert a

particular ground for relief, but he requests that he be pardoned by the State of Louisiana.  After a

thorough reading of the complaint and his memoranda in support, the Court broadly construes this

petition as one seeking release from the conditional probationary status that he has be subjected to

since 1990.

The State filed a response in opposition to Richard's petition contending that Richard has

failed to exhaust available state remedies as required by 28 U.S.C. §2254(b)(1)(A), such that

Richard's claims should be dismissed without prejudice.[28]

## III.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in a federal court under the

federal mailbox rule on October 29, 2007.[30]  The threshold questions in habeas review under the

amended statute are whether the petition is timely and whether the claim raised by the petitioner was

---

[27]Rec. Doc. No. 1.

[28]Rec. Doc. No. 19.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of the Middle District filed Richard's federal habeas petition on October 29, 2007.  Richard dated his signature on the petition on that same date.  This is presumed to be the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

6

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Richard has failed to exhaust state court remedies. The Court agrees and will address this defense.

## IV.   **Failure to Exhaust**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new

factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

In this case, Richard acknowledges throughout the record that he was found not guilty and not guilty by reason of insanity in 1990, and that he has been in forensic inpatient and outpatient care and/or on supervised probation since that time. He argues that he has made post-committal requests to the Trial Court and to the Louisiana Department of Pardons seeking his release from probation, although the record is devoid of any such official pleadings.[31] Nevertheless, these attempts, assuming they were recognized by the state trial court, do not suffice to establish exhaustion of state court remedies.

The State has provided the Court with a verification letter from the Louisiana Supreme Court indicating that, as of March 13, 2008, Richard had no filings in that Court related to his criminal proceedings and commitments.[32] The Court's follow-up research has disclosed that, since that time to the present, Richard still has not had any filings with the Louisiana Supreme Court. Richard has presented nothing to dispute these findings.

---

[31]The state court record and the petition attachments submitted here reflect that Richard has written letters to various authorities about his continued probationary status.

[32]St. Rec. Suppl. Vol. 1 of 1, Verification Letter, dated 3/4/08.

Richard would have had to pursue relief through the Louisiana Supreme Court in order to exhaust available state court remedies.  He has not done so.  The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  For these reasons, Richard's petition must be dismissed for failure to exhaust state court remedies.

## V.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Conrad Richard's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[33]

New Orleans, Louisiana, this 8th day of December, 2010.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[33]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.